[Cite as *Wightman v. Darty*, 2023-Ohio-3748.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

FAYETTE COUNTY


PATRICIA J. WIGHTMAN nka
STUBBLEFIELD,

      Appellant,

  - vs -

ANDREW PHILLIP DARTY,

      Appellee.

:

:      CASE NO. CA2023-03-003

:      O P I N I O N
       10/16/2023

:

:

:

:


APPEAL FROM FAYETTE COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. AD20160467


Patricia J. Wightman nka Stubblefield, pro se.

Andrea M. VanFossen, for appellee, Fayette County Child Support Enforcement Agency.


**PIPER, J.**

{¶ 1} Appellant, Patricia Wightman-Stubblefield (Stubblefield), appeals a decision from the Fayette County Court of Common Pleas, Juvenile Division, terminating child support and ordering her to return overpaid child support to the obligor, Andrew Darty. Stubblefield, appearing pro se, argues that she should not be required to return the overpaid child support.

**Background**

{¶ 2} Stubblefield and Darty are the biological parents of E.W., a child born in May of 2016.[1] Following the establishment of paternity, Darty was ordered to pay Stubblefield child support. This order was in effect for several years with some modifications. It is undisputed that E.W. was adopted by Stubblefield's husband on December 17, 2021.

{¶ 3} The record shows that Darty continued to pay child support even after the adoption. The Fayette County Child Support Enforcement Agency ("CSEA") estimated that Darty overpaid child support to Stubblefield in the amount of $1,472.84.[2]

**Motion to Terminate Child Support**

{¶ 4} On December 15, 2022, CSEA moved to terminate child support alleging it received information about an adoption. CSEA stated that it had been unable to confirm that a final adoption order had been issued because Stubblefield failed to provide any documentation. The trial court set the matter for a hearing.

{¶ 5} The agency began the hearing by stating that ordinarily this matter would have been handled administratively but it had been unable to obtain the necessary information from Stubblefield. Stubblefield made a brief opening statement expressing her dissatisfaction with the agency. She said her prior legal counsel told her that she did not have to move forward with terminating child support and that it was Darty's responsibility. She also claimed the agency did not attempt to contact her or attempt to obtain the necessary information until recently.

---

1. Darty has not been involved in this appeal. An appellee's brief on behalf of CSEA was filed by Andrea VanFossen as the Title IV-D attorney. The responsibilities of a Title IV-D attorney include ensuring the correctness of administrative review numbers, writing motions, and submitting judgment entries regarding child support. *Randal S. O. v. Tammy M. R.*, 6th Dist. Huron No. H-04-011, 2004-Ohio-6469, ¶ 2.

2. The CSEA case manager explained the overpayment figure was only an estimate because Stubblefield did not inform the agency of the date of adoption until a hearing was held on the motion to terminate. At the oral argument in this appeal, Stubblefield stated the figure was approximately $1,600 in overpaid child support.

{¶ 6}   CSEA presented testimony about contacts it had with Stubblefield regarding an adoption or possible adoption.  A case manager testified that Stubblefield first left a voicemail with the agency on March 25, 2022, inquiring about the collection of arrears following an adoption.  The case manager testified that the agency returned Stubblefield's call and explained the process over the phone.  The call ended with the agency advising Stubblefield to keep the agency updated.

{¶ 7}   The case manager testified that on April 12, 2022, Stubblefield informed the agency that E.W. had been adopted by Stubblefield's husband in December of 2021.  CSEA informed Stubblefield that she needed to provide the agency with the adoption order. Stubblefield responded by telling the agency that she had not yet received the paperwork. Two days later Stubblefield informed the agency that she had the adoption order.  The agency reminded Stubblefield she needed to provide the adoption order to make any changes to the case.  It is undisputed that Stubblefield did not provide the adoption order until the day of the hearing.

{¶ 8}   The case manager testified that Darty continued paying child support, which went to Stubblefield, until around September 2022.  Around that time, Darty contacted CSEA and provided CSEA with a copy of his signed consent to the adoption.  Although Darty provided the agency with his consent to the adoption, he was apparently unable to provide the adoption order.  Following the communication with Darty, CSEA placed a hold on the account due to possible adoption.  The case manager testified the agency made one last attempt to obtain the adoption order from Stubblefield but was unsuccessful.  During the last attempt, Stubblefield told CSEA that she had done all she needed to do and that it was not her responsibility to provide the adoption order to the agency.  She then told the agency that Darty should have to provide the adoption order to CSEA.

{¶ 9}   Stubblefield produced the final decree of adoption during the hearing.

Stubblefield testified that she felt like she had gone through every possible channel to have a proper adoption finalized. Stubblefield said she was informed by legal counsel that it was not her responsibility to turn in paperwork. She blamed the agency for placing this burden on her, instead of Darty. Stubblefield said she was "not opposed to the child support case being closed." However, Stubblefield testified that she did not think she should be responsible for returning the overpaid child support.

{¶ 10} On February 1, 2023, the juvenile court issued an order terminating Darty's child support obligation effective the date of the adoption. The juvenile court also determined that Stubblefield failed to provide the agency with the necessary adoption order, which resulted in overpaid child support. Therefore, the juvenile court stated that "CSEA shall determine funds that have been overpaid" by Darty and that Stubblefield "shall be ordered to pay on the funds she was overpaid at a rate of $50.00 per month until the overpayment has been paid in full." Stubblefield timely appealed, raising four assignments of error for review.

**Appeal**

{¶ 11} Assignment of Error No. 1:

{¶ 12} THE FAYETTE COUNTY CHILD SUPPORT AGENCY FAILED TO PROPERLY INVESTIGATE THE TERMINATION OF THE CHILD SUPPORT ORDER.[3]

{¶ 13} In her first assignment of error, Stubblefield argues CSEA failed to conduct a proper investigation to terminate the support order in accordance with "R.C. 5101:12-60-50.1." She claims that had the CSEA taken proper action on the account and been "in

---

3. The assignment of error listed in the body of Stubblefield's brief is not consistent with the assignment of error listed in the table of contents, thereby violating this court's Local Rule 11(B)(3). In the table of contents, Stubblefield wrote "THE TRIAL COURT AND THE FAYETTE COUNTY CSEA ERRED BY FAILING TO INVESTIGATE THE TERMINATION OF THE CHILD SUPPORT ORDER IN A TIMELY MANNER." It is not clear how the trial court would be engaged in such an investigation and Stubblefield offers no explanation in support.

compliance with R.C. Rule 5101:12-60-50 [sic], there would not have been any erroneous payments collected on the account."

{¶ 14} A juvenile court has wide discretion regarding child support obligations, and the decision of the juvenile court will not be disturbed absent an abuse of discretion. *Blair v. Adkins*, 12th Dist. Fayette No. CA2020-10-018, 2021-Ohio-2292, ¶ 15. An abuse of discretion is more than an error of law; it implies that the trial court acted unreasonably, arbitrarily, or unconscionably. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 15} Pursuant to R.C. 3119.88, a child support order should terminate upon the child's adoption. R.C. 3119.87 requires the obligee of a child support order to immediately notify the agency of any reason why child support should be terminated. *Boone v. Brown*, 3d Dist. Hancock No. 5-06-14, 2006-Ohio-5967, ¶ 5. The failure to do so is contempt of court. *Id.* The obligor may notify the agency but is not mandated to do so. *Id.*

{¶ 16} Stubblefield cites "R.C. 5101:12-60-50.1" for the proposition that the CSEA had a duty to conduct an investigation to either terminate the support order or take some action to prevent the overpayment of child support. We presume that Stubblefield refers to Ohio Adm.Code 5101:12-60-50.1, which states that CSEA "shall complete an administrative termination investigation and issue findings and recommendations regarding whether the child support order should terminate within twenty days of the date the CSEA is notified by either the obligee or obligor or becomes aware" of a required administrative termination reason.

{¶ 17} The juvenile court did not address this issue because it was never raised below. Stubblefield did not once mention Ohio Adm.Code 5101:12-60-50.1 or argue she should be permitted to retain overpaid child support because the agency failed to complete an investigation in twenty days. Though she expressed dissatisfaction with the agency and the process, her argument below was that Darty should have been responsible for providing

the agency with the adoption order. She also suggested CSEA should have obtained the documents "through other individuals who had more responsibility in this case." It is well established that a party may not raise new issues or legal theories for the first time on appeal. *Wells Fargo Bank, N.A. v. Washington*, 12th Dist. Butler No. CA2014-10-214, 2015-Ohio-2988, ¶ 17; *BAC Home Loans Servicing, LP v. Mullins*, 12th Dist. Preble No. CA2013-12-015, 2014-Ohio-4761, ¶ 33 ("it is axiomatic that a party cannot raise new issues or legal theories for the first time on appeal and failure to raise an issue before the trial court results in waiver of that issue for appellate purposes").

{¶ 18} We are mindful that Stubblefield has represented herself throughout this process. However, pro se litigants are held to the same standard as litigants who are represented by counsel. *Havens v. Havens*, 12th Dist. Fayette No. CA2022-01-002, 2022-Ohio-3103, ¶ 18. As a result, pro se litigants are presumed to have knowledge of the law and correct legal procedures so that they remain subject to the same rules and procedures to which represented litigants are bound. *Sparks v. Sparks*, 12th Dist. Warren No. CA2015-10-095, 2016-Ohio-2896, ¶ 6. In other words, "[p]ro se litigants are not to be accorded greater rights and must accept the results of their own mistakes and errors, including those related to correct legal procedure." *Cox v. Zimmerman*, 12th Dist. Clermont No. CA2011-03-022, 2012-Ohio-226, ¶ 21.

{¶ 19} However, even if Stubblefield had raised this argument below, the result would remain the same. Assuming Stubblefield's oral representations were sufficient to put the agency on notice of the adoption, no statute or administrative rule specifies the consequences if the agency fails to complete an investigation within twenty days. The agency's inability to timely complete an investigation was primarily due to the lack of cooperation received from Stubblefield. Furthermore, the failure to complete an investigation within twenty days does not result in a windfall for an obligee. There is simply

no support for Stubblefield's argument that she should be entitled to retain overpaid child support paid by an obligor when the agency fails to complete an investigation within twenty days.

{¶ 20} It is clear that in the proceedings below, and continuing throughout this appeal, Stubblefield places much of the blame for this situation on Darty. She maintains that Darty should have been the one responsible for providing notice of the adoption and argues that CSEA has not held Darty to the "same standard" as her suggesting that she has been treated unfairly. However, Stubblefield, as the obligee, had the mandatory duty to notify CSEA of any reason child support should terminate. R.C. 3119.87. The statute only states that the obligor, in this case, Darty, may notify the child support enforcement agency administering the child support order. *Id.* When used in a statute, the word "shall" generally renders the provision in which it is contained mandatory, while the word "may" generally renders a provision optional, permissive, or discretionary. *Dorrian v. Scioto Conservancy Dist.*, 27 Ohio St.2d 102, 107 (1971).

{¶ 21} Moreover, Stubblefield may be operating under the misconception that these adoption records were easily obtainable. Adoption records are expressly cloaked in confidentiality by statute. R.C. 3107.17; *Wood Cty. Dept. of Job & Family Serv. v. Pete F.*, 6th Dist. Wood No. WD-05-023, 2005-Ohio-6006, ¶ 12-13. Darty was able to provide CSEA with his consent to adopt, but apparently not the final adoption order. Until Stubblefield presented the order at the hearing, it is undisputed that no one at CSEA had seen a final order confirming the adoption.

{¶ 22} We are not unsympathetic to what clearly seems to be an issue with miscommunication. It is unfortunate that a hold could not have been placed on the account sooner. As noted earlier, the agency placed a hold on the account in September after Darty informed CSEA of the adoption but not in April when Stubblefield did. The agency explained

that Darty provided a document showing his consent to the adoption, thus justifying the issuance of the hold, while Stubblefield had been less than clear in her representations. The agency reiterated that Stubblefield never provided it with a date the adoption was completed and failed to timely provide the necessary documents. Both sides clearly assign fault to one another. While there may have been a miscommunication, the simple fact remains that Stubblefield was aware that once the adoption was completed, she no longer was entitled to receive any child support payments. It does not seem unfair or unjustified for the juvenile court to order the return of overpaid child support payments, nor do we find that such an order amounts to an abuse of discretion.

{¶ 23} In summary, the issue raised with regard to CSEA's duty to investigate earlier pursuant to Ohio Adm.Code 5101:12-60-50.1 was not raised in the juvenile court below and cannot be considered for the first time on appeal. However, it was ultimately Stubblefield, not Darty, who had the responsibility to notify CSEA of the adoption. We fail to understand why Stubblefield believes she should be able to retain the overpaid child support. For those reasons, we decline to find the juvenile court's decision amounts to an abuse of discretion.

{¶ 24} Assignment of Error No. 2:

{¶ 25} THE TRIAL COURT AND FAYETTE COUNTY CSEA DISREGARDED THE PROCESS FOR TERMINATING A SUPPORT ORDER AND IGNORED OHIO REVISED CODE 3119.

{¶ 26} In her second assignment of error, Stubblefield argues that CSEA did not have the authority to file for judicial review of a child support obligation in the absence of a request for a hearing by either the obligor or obligee. She therefore states that the juvenile court did not have authority to conduct a hearing on the motion to terminate. However, this argument is clearly without merit as R.C. 3119.88(B) states that a "child support order may be terminated by the court or child support enforcement agency for any reasons listed in

division (A) of this section." Adoption is one of the reasons listed. R.C. 3119.88(A)(10). Where a child support overpayment is found, the trial court has discretion in ordering repayment. *Dietrich v. Dietrich*, 8th Dist. Cuyahoga No. 93786, 2010-Ohio-3608, ¶ 10.

{¶ 27} The cases cited by Stubblefield, *Hayslip v. Hanshaw*, 4th Dist. Highland No. 15CA20, 2016-Ohio-3339, and *Sotock v. Kebe*, 8th Dist. Cuyahoga No. 99450, 2013-Ohio-4494, are both factually and legally distinguishable from the case at bar.[4] The juvenile court clearly had the authority to hold a hearing, terminate the support order, and order the return of the overpaid child support. Stubblefield's second assignment of error is overruled.

{¶ 28} Assignment of Error No. 3:

{¶ 29} THE CSEA IGNORED THE LANGUAGE IN RULE 5101:12 OF THE OHIO ADMINISTRATIVE CODE REGARDING THE RECOUPMENT PROCESS.

{¶ 30} In her third assignment of error, Stubblefield argues CSEA was not permitted to use the recoupment process when an erroneous payment is made as a result of a remitter error. She points to Ohio Adm.Code 5101:12-80-05.6(C), which states:

> When an erroneous payment is the result of a remitter error, the remitter is responsible for resolving the error. When the CSEA elects to assist a remitter, via the recoupment process, in recovering a payment issued as a result of a remitter error, the CSEA shall cover the fiscal impact of the remitter error.

"Remitter" means any entity or individual (e.g., obligor, obligee, employer, financial institution, third party) that submits a payment to CSPC or a CSEA. Ohio Adm.Code 5101:12-80-05(C)(10). "Remitter error" means any factual misstatement in the submission of a support payment and includes, but is not limited to: an incorrect posting identifier, payment amount, or payment distribution calculation contained within the payment or

---

4. *Hayslip* involved a case that had gone through the administrative review process of CSEA. Where neither party objected to the administrative determination, the Fourth District held that the trial court was required to issue a revised court order rather than invoke its own inherent authority to review the agency's child support calculation. *Id*. at ¶ 26. *Sotock* involved a case where the obligor did not receive a copy of the CSEA's recommendation prior to the trial court's adoption of that recommendation. *Id*. at ¶ 7.

associated remittance documentation. Ohio Adm.Code 5101:12-80-05(C)(11).

{¶ 31} Despite her arguments to the contrary, the funds the juvenile court ordered Stubblefield to return are not remitter error payments. Stubblefield was ordered to return overpaid child support payments. Ohio Adm.Code 5101:12-80-05.6(A)(2) specifically allows for the recoupment process to be used to refund overpaid child support payments upon termination of a support order and the juvenile court had discretion in ordering repayment. *See Dietrich*, 2010-Ohio-3608 at ¶ 10. In this case, the juvenile court determined that Darty continued making child support payments even after E.W.'s adoption and ordered Stubblefield to return the overpaid child support to Darty. There was no error below. Stubblefield's third assignment of error is overruled.

{¶ 32} Assignment of Error No. 4:

{¶ 33} THE ACTIONS BY THE TRIAL COURT AND THE ISSUED JUDGEMENT [sic] ENTRY IS AN ABUSE OF DISCRETION AND DENIAL OF DUE PROCESS BY THE TRIAL COURT.

{¶ 34} In her final assignment of error, Stubblefield argues that the juvenile court's decision ordering her to return the overpaid child support obligation was an abuse of discretion and also a denial of due process. This argument reiterates her previous arguments that the CSEA did not act diligently to investigate whether there was a reason to terminate child support. She also argues that CSEA's motion to terminate was defective for not complying with the Fayette County Domestic Relations Court's Local Rule 2.04, as it did not include the grounds authorizing it to file the motion. However, the local rule cited by Stubblefield was inapplicable to this proceeding, as it was in the juvenile court, not the domestic relations court. We likewise find that Stubblefield was not deprived of due process of law, as she had notice and the opportunity to be heard. *Lemasters v. Lemasters*, 12th Dist. Madison No. CA2018-06-018, 2019-Ohio-4395, ¶ 35. Stubblefield had the opportunity

to present her case and the juvenile court's decision appropriately ordered her to return the overpaid child support to which she was not entitled. There was no abuse of discretion or denial of due process. Stubblefield's fourth assignment of error is overruled.

**Conclusion**

{¶ 35} Following review of the record, we find the juvenile court did not abuse its discretion terminating the child support order and ordering Stubblefield to return the overpaid child support to Darty. Accordingly, we find Stubblefield's four assignments of error are without merit and are hereby overruled.

{¶ 36} Judgment affirmed.

S. POWELL, P.J., and M. POWELL, J., concur.